**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| KRISTIN WEAVER,<br><br>                               *Plaintiff,*<br><br>          v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA; TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA; UNIVERSITY OF PENNSYLVANIA; and ANDRÉ DOUGLAS,<br><br>                               *Defendants.* | Case No. _____<br><br><br>JURY TRIAL DEMANDED (8) |

**COMPLAINT**

**I.    THE PARTIES:**

1.      Plaintiff, Kristin Weaver, is an adult individual and current resident of the Commonwealth of Pennsylvania, who currently resides at 4720 Kingsessing Avenue, Fl. 1, Philadelphia, PA 19143, in Philadelphia County, Pennsylvania.

2.      Defendant, The Trustees of the University of Pennsylvania, was, at all times relevant hereto, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business believed and averred to be located at 3451 Walnut Street, Room 310, Philadelphia, PA 19104, in Philadelphia County, Pennsylvania.  Defendant, The Trustees of the University of Pennsylvania's, Office of General Counsel is located at 2929 Walnut Street, 4th Floor, Philadelphia, PA 19104.  At all times relevant hereto, it is believed and therefore averred that Defendant, The Trustees of the University of Pennsylvania, employed the Plaintiff.

3.      Defendant, Trustees of the University of Pennsylvania, was, at all times relevant hereto, a corporation or other entity organized and existing under the laws of the Commonwealth

of Pennsylvania, with a principal place of business believed and averred to be located at 3451 Walnut Street, Room 310, Philadelphia, PA 19104, in Philadelphia County, Pennsylvania. Defendant, Trustees of the University of Pennsylvania's, Office of General Counsel is located at 2929 Walnut Street, 4th Floor, Philadelphia, PA 19104. At all times relevant hereto, it is believed and therefore averred that Defendant, Trustees of the University of Pennsylvania, employed Plaintiff.

4.      Defendant, University of Pennsylvania, was, at all times relevant hereto, a university with a principal place of business believed and averred to be located at 3451 Walnut Street, Philadelphia, PA 19104, in Philadelphia County, Pennsylvania. Defendant, University of Pennsylvania's, Office of General Counsel is located at 2929 Walnut Street, 4th Floor, Philadelphia, PA 19104. At all times relevant hereto, it is believed and therefore averred that Defendant, University of Pennsylvania, employed Plaintiff.

5.      Defendant, André Douglas, was, at all times relevant hereto, an adult individual and current resident of the Commonwealth of Pennsylvania, residing, upon information and belief, in Philadelphia County, Pennsylvania. Defendant, André Douglas's, place of employment is located at 3620 Locust Walk, Steinberg-Dietrich Hall, Suite 3000, Philadelphia, PA 19104, in Philadelphia County, Pennsylvania. An individual or personal liability claim is permitted under the Family and Medical Leave Act ("FMLA") including an individual liability claim against a supervisor/manager who was allegedly responsible for committing a violation of the FMLA. Defendant, Mr. Douglas, is alleged to be Plaintiff's supervisor responsible for discriminating against Plaintiff and retaliating against Plaintiff for her request for and use of FMLA leave during her employment, and retaliating against her for her complaint of discrimination on the basis of the same which Plaintiff lodged against Defendants because of the conduct of Defendant, Mr.

2

Douglas, during Plaintiff's employment with Defendants. Defendant, Mr. Douglas, then allegedly provided a false account to the EEOC stating that Plaintiff's position was eliminated, when, in fact, it was not, and when, in fact, Mr. Douglas himself posted Plaintiff's position for others to apply on LinkedIn, seeking applicants for Plaintiff's former position, just *not* the Plaintiff, on account of bias against Plaintiff which Plaintiff contends Mr. Douglas harbored against her due to her health conditions and her request for leave due to those conditions as described more fully below.

## II. JURISDICTION & VENUE:

6.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

7.      This Court has personal jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Company v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

8.      29 U.S.C. § 2617(a)(2) provides, in pertinent part, that an action to recover damages or equitable relief under the FMLA "may be maintained against any employer …in any Federal or State court of competent jurisdiction … ." 29 U.S.C. § 2617(a)(2).

9.      Under 28 U.S.C. § 1391(b)(1), venue is proper in this judicial district because Defendants**,** The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, University of Pennsylvania, and André Douglas, reside or are deemed to reside in this judicial district. *See* 28 U.S.C. § 1391(b)(1).

3

10.     Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and University of Pennsylvania, are deemed to reside in this judicial district pursuant to 28 U.S.C. § 1391(c)(2) which provides, in pertinent part:

(c)     Residency.—For all venue purposes—
…
(2)     an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question … .

28 U.S.C. § 1391(c)(2).

11.     Under 28 U.S.C. § 1391(b)(2), venue is also proper in this judicial district because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.  28 U.S.C. § 1391(b)(2).

12.     At all times relevant hereto, Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, each employed fifty (50) or more employees within a 75-mile radius for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

13.     At all times relevant hereto, Plaintiff was employed by and working for Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, in this judicial district.

### III.  MATERIAL FACTS:

14.      All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

15.     Defendants discriminated against and/or retaliated against Plaintiff on account for her attempt to exercise and/or her exercise of rights under the Family and Medical Leave Act

("FMLA"), in violation of 29 U.S.C. §§ 2615(a)(1)-(a)(2), by wrongfully terminating/discharging Plaintiff from her employment with Defendants on account of her request for and taking of FMLA leave for her own serious health conditions.

16.    At all times relevant hereto, Defendants employed Plaintiff as a Program Coordinator for the University of Pennsylvania's Wharton School of Business, specifically the Wharton Alt-Finance Institute.  Plaintiff was employed by Defendants from June 27, 2022 through October 15, 2024.  Plaintiff was employed by Defendants for over two (2) years, going on three (3) years, and during that time, Plaintiff contends she worked to Defendants' satisfaction, without issue, and without any disciplinary write-up or written warning whatsoever until after the time that Plaintiff engaged in protected activity by exercising or attempting to exercise her rights under the Family and Medical Leave Act ("FMLA"), as described more fully herein, by requesting and taking FMLA leave for her own serious health conditions.

17.    On or about June 4, 2024, Plaintiff requested leave under the FMLA on account of her own serious health conditions from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, specifically of the Human Resources ("HR") department of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  Plaintiff indicated that the start date for her FMLA leave would be June 19, 2024. Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, approved Plaintiff's request for FMLA leave.

18.    At the time Plaintiff requested leave under the FMLA from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania due to her own serious health conditions, Plaintiff was an eligible

employee under the FMLA, as Plaintiff had at that point been previously employed by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, for a total of at least one (1) year and 1,250 hours of service.

19.    On or about June 4, 2024, Plaintiff requested FMLA leave from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, for her own serious health conditions, which consisted of an exacerbation of Plaintiff's cerebral palsy condition, and of her covered mental health conditions including Obsessive Compulsive Disorder ("OCD"), Generalized Anxiety Disorder ("GAD"), and Attention Deficit Hyperactivity Disorder ("ADHD").  Plaintiff's physical and mental health conditions were exacerbated in or about this time.  Plaintiff suffered physical and mental health challenges, including suicidal ideation, which were exacerbated at this time.

20.    On or about the same date, June 4, 2024, Plaintiff lodged a complaint against her supervisor, Defendant, Mr. Douglas, for allegedly discriminating against and retaliating against Plaintiff for her valid request to use FMLA leave.  Plaintiff's act of complaining about the allegedly discriminatory and retaliatory conduct of her supervisor, Defendant, Mr. Douglas, constituted protected conduct or activity under the FMLA, in addition to Plaintiff's valid request to use FMLA leave, and her subsequent valid use of FMLA leave, which also constituted protected conduct or activity under the FMLA.

21.    On or about June 17, 2024, Mr. Samuel Starks, the Executive Director of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania's Office of Affirmative Action ("OAA"), which Defendants have subsequently renamed the Office of Equal Opportunity Programs ("OEOP"), had

6

a meeting with Plaintiff to address her complaint of discrimination and retaliation against Mr. Douglas.

22.     Plaintiff subsequently moved back her FMLA leave date which was scheduled to begin on June 19, 2024 in order for it to begin on June 24, 2024 instead.

23.     On or about June 21, 2024, as a result of Plaintiff moving back the start date of her FMLA leave from June 19, 2024 to June 24, 2024, Defendants unjustifiably provided Plaintiff discipline in the form of an Employee Counseling Form from Defendant, Mr. Douglas, who was the subject of Plaintiff's complaint of discrimination and retaliation, and which was the first such disciplinary write-up or written warning Plaintiff had ever received up to that point during her employment with Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  Plaintiff contends that Defendant, Mr. Douglas, provided Plaintiff the Employee Counseling Form on account of discrimination and retaliation against Plaintiff due to her valid request to use FMLA leave, and on account of the complaint of discrimination and retaliation that Plaintiff had filed against Mr. Douglas.

24.     When Plaintiff subsequently rescheduled the start date for her FMLA leave from June 19, 2024 to June 24, 2024, Mr. Douglas then scheduled a meeting with Plaintiff to deliver the Employee Counseling Form to Plaintiff.  Mr. Douglas admitted in the e-mail he sent to Plaintiff scheduling the meeting, which is attached hereto as Exhibit "C," that Mr. Douglas was changing the date he was going to deliver the Employee Counseling Form to Plaintiff based on the fact that Plaintiff had rescheduled the start date for her medical leave.  More specifically, Mr. Douglas stated bluntly to Plaintiff, in the email, in pertinent part, "Apologies for that, but because you pushed back your leave date, we are starting it now." *See* E-mail Correspondence from Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, sent to Plaintiff, dated June 21, 2024,

7

a true and correct copy of which is attached hereto as Exhibit "C," at page 1.  It should also be noted that Mr. Douglas, in addition to openly admitting that he was changing the date he was going to deliver the Employee Counseling Form to Plaintiff based on the fact that Plaintiff had rescheduled the start date for her medical leave, provided an "apolog[y]" to Plaintiff for the same.

25.     Mr. Douglas received notice/knowledge of Plaintiff's request for FMLA medical leave close in time to the Employee Counseling Form being provided to Plaintiff by Mr. Douglas. As a result of Plaintiff changing the start date of her FMLA leave from June 19, 2024 to June 24, 2024, Mr. Douglas decided to deliver the Employee Counseling Form to Plaintiff on June 21, 2024.

26.     Plaintiff contends Mr. Douglas's decision not to give the Employee Counseling Form to Plaintiff until after Plaintiff had changed the start date of her FMLA leave from June 19th to June 24th was because Mr. Douglas believed he could avoid creating an inference of discrimination or retaliation against Plaintiff based on the timing of the Plaintiff's start date for her FMLA leave and the date that Mr. Douglas was going to subsequently deliver the Employee Counseling Form to Plaintiff.  However, once Plaintiff rescheduled the start date of her FMLA leave from June 19th to June 24th, Mr. Douglas believed he could then provide the Employee Counseling Form to Plaintiff on June 21st and that in doing so he could attempt to avoid such an inference being drawn.

27.     The fact that Mr. Douglas was not going to deliver the Employee Counseling Form to Plaintiff until after Plaintiff had changed the start date of her FMLA leave undermines the credibility of, and the stated reason or reasons contained within, the Employee Counseling Form. Whether or not Plaintiff made a request for FMLA leave, the start date for her FMLA leave, or the fact that she subsequently rescheduled the start date of her FMLA leave should not be considerations in whether discipline is going to be given or is not going to be given to the

8

employee.  If the discipline was justified, Plaintiff contends that the discipline would have been given notwithstanding the start date of her FMLA leave, or the fact that Plaintiff subsequently changed the start date of her FMLA leave.  Mr. Douglas was clearly attempting to avoid an inference of discrimination or of retaliation being drawn against him with respect to the timing of his conduct.  Plaintiff further alleges that the impetus for the Employee Counseling Form being given to Plaintiff was on account of the fact that Plaintiff had requested FMLA leave and had rescheduled the start date for her FMLA leave.

28.    Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, notified Plaintiff that her employment was being terminated on October 15, 2024.  Further, it is believed and therefore averred that, as early as on or about October 11, 2024, Mr. Douglas contacted the University's Information Technology ("I.T.") department for purposes of closing out Plaintiff's e-mail account, credentials, and/or related data, because Defendants were planning to terminate Plaintiff's employment.

29.    Defendant, The Trustees of the University of Pennsylvania, subsequently submitted a Position Statement in this matter to the Equal Employment Opportunity Commission ("E.E.O.C.") on October 2, 2025.  In that Statement, Defendant, The Trustees of the University of Pennsylvania, set forth the following as the purported legitimate, non-discriminatory reason ("LNDR") for Plaintiff's termination in the instant matter, the pertinent excerpt of which is copied below:

> …
>
> Following a review of Ms. Weaver's position, which showed many of her tasks were not being performed and/or were obsolete or redundant, Penn eliminated Ms. Weaver's position.  She was informed of this decision on October 15, 2024.  (*See*

Exhibit F.)   The position has not been filled and has not been posted – it was eliminated for business reasons and Ms. Weaver is not being replaced.

…

*See* Position Statement submitted by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., dated October 2, 2025, at page 3, paragraph 1.  A complete copy of the Position Statement provided by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., dated October 2, 2025, is attached hereto as Exhibit "A" in order to provide the full context for the statement.

30.    The aforementioned reason provided for Plaintiff's termination in the Position Statement supplied by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., is inconsistent, contradictory, and pretextual.  Plaintiff can prove that the foregoing statement made by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C. is false.  After Plaintiff was terminated, Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, Plaintiff's direct supervisor, the subject of Plaintiff's complaint of discrimination and retaliation, and the alleged decisionmaker responsible for making the decision to discharge Plaintiff, made a post on LinkedIn seeking applicants for Plaintiff's former position of Program Coordinator.  In or about January 2025, and possibly earlier, Mr. Douglas posted on LinkedIn as follows:

Come join my team! We are currently looking for a temporary program coordinator to assist with the in-person programming aspect of Wharton Academy and Wharton Global Youth Programs.  Although this is a temporary position, it may lead to a full-time offer as we look to expand our team. If you have questions, feel free to reach out.

#highered #program #students #job #hiring #opportunity #summer #temporary

*See* the attached LinkedIn post from Mr. André Douglas, Wharton Alt-Finance Program Manager, for Program Coordinator, dated in or about January 2025, a true and correct copy of which is attached hereto as Exhibit "B."

10

31.     The post included an attachment that linked to a website where the applicant could apply for Plaintiff's former position of Program Coordinator. *See* Exhibit "B." Despite Defendants' representations to the contrary to the E.E.O.C., Plaintiff's position was clearly posted. Further, despite Defendants' representations to the contrary to the E.E.O.C., the position was not eliminated for business reasons, the position was subsequently filled, and Plaintiff was subsequently replaced. Further, the position was posted by the individual who was the subject of Plaintiff's complaint of discrimination and retaliation and who made the decision to terminate Plaintiff.

32.     It should be respectfully pointed out that Undersigned Counsel is not attempting to impute a misrepresentation to Opposing Counsel, but rather, it is believed that Opposing Counsel has spoken with his client, Mr. Douglas, and that Mr. Douglas is representing that Plaintiff's position was eliminated, when it was clearly not, and that her position was never posted, when it clearly was (by Mr. Douglas himself). It is believed and therefore averred that Mr. Douglas made the aforementioned representation to Opposing Counsel for purposes of covering up the discrimination and retaliation against Plaintiff which Mr. Douglas harbored against her. The LinkedIn post reveals that Plaintiff's position was not eliminated, and that it was, in fact, posted (by Mr. Douglas himself), because Mr. Douglas wanted someone for the position, just not the Plaintiff, she contends due to bias against her.

33.     It is believed that the LinkedIn post was made by Mr. Douglas on or about January 30, 2025, though it could have been earlier, as Plaintiff captured a screenshot of the post on February 5, 2025, at which time the post stated it was one (1) week old. *See* Screenshot of LinkedIn post dated on or about January 30, 2025, and captured by Plaintiff on February 6, 2025, a true and correct copy of which is attached hereto as Exhibit "C." It is believed the post was made by Mr.

11

Douglas approximately three (3) months, or less, following Plaintiff's termination, during the same time period that Defendant, The Trustees of the University of Pennsylvania, was representing that Plaintiff's position was eliminated, when it was clearly not; representing that her position was not posted, when it clearly was; and where Mr. Douglas further admitted that the department was actually "expand[ing] our team." *See* Exhibits "B" and "C."

34. The LinkedIn post was liked by many individuals and reposted several times. Upon information and belief, the individuals who liked and reposted the content are believed and therefore averred to be employees of Defendant, The Trustees of the University of Pennsylvania, and are further believed and therefore averred to be supervisors/managers employed by Defendant, The Trustees of the University of Pennsylvania.

35. An inconsistent reason provided for the employee's termination is sufficient to demonstrate a causal connection for purposes of establishing a *prima facie* case of discrimination/retaliation under the FMLA as recognized by the Court of Appeals for the Third Circuit in *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314 (3d Cir. 2014). *See Lupyan v. Corinthian Coll., Inc.*, 761 F.3d 314, 325 (3d Cir. 2014) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000), for the proposition that "one means of establishing the requisite causal connection in retaliation claims is setting forth evidence showing 'inconsistent reasons for terminating the employee[.]'").

36. Furthermore, an inconsistency or contradictory reason provided for the employee's termination is sufficient evidence upon which the trier of fact may infer pretext or an illegal discriminatory or retaliatory motive. *See Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994).

37. Prior to Mr. Douglas becoming Plaintiff's direct supervisor in or about January 2024, Plaintiff had been employed by Defendants, The Trustees of the University of Pennsylvania,

12

Trustees of the University of Pennsylvania, and/or University of Pennsylvania, for over two (2) years, going on three (3) years, without experiencing the type of bias she experienced once Mr. Douglas became Plaintiff's direct supervisor.  Plaintiff's disabilities were known to Defendants during her employment including prior to Mr. Douglas becoming her supervisor.  Plaintiff alleges that she experienced a distinct change in treatment toward her from Defendant, Mr. Douglas, once Mr. Douglas became her supervisor.

38.    Following the exhaustion of Plaintiff's 12-week FMLA entitlement, on or about September 2, 2024, Plaintiff was subsequently approved for, and Plaintiff's leave was subsequently covered by, the Short-Term Disability ("STD") policy offered to Plaintiff by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  For clarity, Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania ran Plaintiff's 12-week FMLA entitlement concurrently with the Short-Term Disability leave.  Plaintiff was subsequently on Short-Term Disability leave beginning September 3, 2024 through September 24, 2024, with a return-to-work date of September 25, 2024.  Plaintiff was subsequently terminated from her employment by Defendants on or about October 15, 2024, with, Defendant, André Douglas, upon information and belief, notifying the University's I.T. department to close out Plaintiff's e-mail account, credentials, and/or related data on or about October 11, 2024 because Defendants were planning to terminate Plaintiff's employment. Therefore, Plaintiff also identifies the aforementioned timing as further evidence in support of Plaintiff's *prima facie* case of discrimination/retaliation under the FMLA as well as the Employee Retirement Income Security Act ("ERISA") as set forth more fully below.

13

39.     It should be pointed out that, on or about July 9, 2024, after Plaintiff's continuous leave had already begun, Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania continued to give Plaintiff a hard time unjustifiably on account of her health conditions because they did not believe Plaintiff was suffering from a "true disability," in the words of Ms. Aysha Horshaw, Benefits Specialist with the HR department of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  More specifically, Ms. Horshaw wanted more information from Plaintiff stating, "These details are needed to determine your eligibility for medical leave and to show evidence of true disability as required for short-term disability."  Then, on July 11, 2024, Ms. Horshaw asked Plaintiff again, stating, "As previously stated, this information is required to determine your eligibility for medical leave and to show evidence of true disability as required for short-term disability."  However, it is not believed that the policies and procedures of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, or their benefit plan, refers to an individual as having a "true disability."  It is believed Defendants doubted Plaintiff's disability and gave her a hard time during her FMLA leave which she needed due to her health conditions.

40.     It should be further pointed out, on October 15, 2024, Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania presented Plaintiff with a release agreement at the time of her termination which she did not sign and which she has rejected.  The release agreement was presented to Plaintiff by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, in an unsuccessful attempt to avoid a

discrimination lawsuit being brought against them by Plaintiff relating to her termination. The release specifically requested Plaintiff waive and release "the University and any affiliated entities, as well as the University's and such entities' trustees, officers, faculty, employees, and agents, and all of their successors, from any and all claims and liability" including "claims and liability relating to my employment and separation[,] … the University's decision to discontinue my position and not to offer me a transfer job opportunity, as well as all claims under … the Americans With Disabilities Act, as amended … the Pennsylvania Human Relations Act, as amended; Philadelphia Fair Practices Ordinance, as amended; the Employee Retirement Income Security Act, as amended[,]" though the release forgot to specifically include the Family and Medical Leave Act ("FMLA"). Plaintiff did not sign the agreement. Plaintiff has rejected the agreement and institutes this action.

## IV. CLAIMS FOR RELIEF:

**COUNT I:**
**WRONGFUL DISCHARGE/TERMINATION IN VIOLATION OF 29 U.S.C. § 2615(a)(2) OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA") — DISCRIMINATION/RETALIATION FOR EXERCISING AND/OR ATTEMPING TO EXERCISE AN FMLA RIGHT BY REQUESTING AND/OR TAKING FMLA LEAVE (Plaintiff, Kristin Weaver v. Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, University of Pennsylvania, and André Douglas)**

41.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

42.     On or about June 4, 2024, Plaintiff requested leave under the FMLA on account of her own serious health conditions from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, specifically of the HR department of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania. Plaintiff indicated

15

that the start date for her FMLA leave would be June 19, 2024.  Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, approved Plaintiff's request for FMLA leave.

43.    At the time Plaintiff requested leave under the FMLA from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania due to her own serious health conditions, Plaintiff was an eligible employee under the FMLA, as Plaintiff had at that point been previously employed by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, for a total of at least one (1) year and 1,250 hours of service.

44.    On or about June 4, 2024, Plaintiff requested FMLA leave from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, for her own serious health conditions, which consisted of an exacerbation of Plaintiff's cerebral palsy condition, and of her covered mental health conditions including Obsessive Compulsive Disorder ("OCD"), Generalized Anxiety Disorder ("GAD"), and Attention Deficit Hyperactivity Disorder ("ADHD").  Plaintiff's physical and mental health conditions were exacerbated in or about this time.  Plaintiff suffered physical and mental health challenges, including suicidal ideation, which were exacerbated at this time.

45.    On or about the same date, June 4, 2024, Plaintiff lodged a complaint against her supervisor, Defendant, Mr. Douglas, for allegedly discriminating against and retaliating against Plaintiff for her valid request to use FMLA leave.  Plaintiff's act of complaining about the allegedly discriminatory and retaliatory conduct of her supervisor, Defendant, Mr. Douglas, constituted protected conduct or activity under the FMLA, in addition to Plaintiff's valid request to use FMLA

16

leave, and her subsequent valid use of FMLA leave, which also constituted protected conduct or activity under the FMLA.

46.    On or about June 17, 2024, Mr. Samuel Starks, the Executive Director of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania's Office of Affirmative Action ("OAA"), which Defendants have subsequently renamed the Office of Equal Opportunity Programs ("OEOP"), had a meeting with Plaintiff to address her complaint of discrimination and retaliation against Defendant, André Douglas.

47.    Defendants took adverse employment action against Plaintiff on or about October 15, 2024 by wrongfully terminating/discharging Plaintiff from her employment on that date in retaliation for Plaintiff's request for and use of FMLA leave.  Further, it is believed and therefore averred that, as early as on or about October 11, 2024, Mr. Douglas contacted the University's I.T. department for purposes of closing out Plaintiff's e-mail account, credentials, and/or related data, because Defendants were planning to terminate Plaintiff's employment.

48.    The adverse employment action taken by Defendants against Plaintiff was causally connected to Plaintiff's protected conduct/activity which consisted of attempting to exercise and/or exercising a right under the FMLA by requesting and taking FMLA leave.

49.    Defendants provided an inconsistent, contradictory, and pretextual reason for terminating/discharging Plaintiff.  Defendant, The Trustees of the University of Pennsylvania, submitted a Position Statement in this matter to the E.E.O.C. on October 2, 2025.  In that Statement, Defendant, The Trustees of the University of Pennsylvania, set forth the following as the purported legitimate, non-discriminatory reason ("LNDR") for Plaintiff's termination in the instant matter, the pertinent excerpt of which is copied below:

17

…

> Following a review of Ms. Weaver's position, which showed many of her tasks were not being performed and/or were obsolete or redundant, Penn eliminated Ms. Weaver's position. She was informed of this decision on October 15, 2024. (*See* Exhibit F.) The position has not been filled and has not been posted – it was eliminated for business reasons and Ms. Weaver is not being replaced.

> …

*See* Position Statement submitted by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., dated October 2, 2025, at page 3, paragraph 1. A complete copy of the Position Statement provided by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., dated October 2, 2025, is attached hereto as Exhibit "A" in order to provide the full context for the statement.

50. Plaintiff can demonstrate a causal connection for purposes of Plaintiff's *prima facie* case of discrimination/retaliation on account of the fact that Defendants provided inconsistent and contradictory statements regarding the reason for Plaintiff's termination.

51. The foregoing reason provided for Plaintiff's termination in the Position Statement supplied by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., is inconsistent, contradictory, and pretextual, as Plaintiff can prove that the foregoing statement made by Defendant, The Trustees of the University of Pennsylvania, is false. After Plaintiff was terminated, Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, Plaintiff's direct supervisor, the subject of Plaintiff's complaint of discrimination and retaliation, and the alleged decisionmaker responsible for making the decision to discharge Plaintiff, made a post on LinkedIn seeking applicants for Plaintiff's former position of Program Coordinator, just not Plaintiff. In or about January 2025, and possibly earlier, Mr. Douglas posted on LinkedIn as follows:

18

Come join my team! We are currently looking for a temporary program coordinator to assist with the in-person programming aspect of Wharton Academy and Wharton Global Youth Programs. Although this is a temporary position, it may lead to a full-time offer as we look to expand our team. If you have questions, feel free to reach out.

#highered #program #students #job #hiring #opportunity #summer #temporary

*See* the attached LinkedIn post from Mr. André Douglas, Wharton Alt-Finance Program Manager, for Program Coordinator, dated in or about January 2025, and captured by Plaintiff in a screenshot on February 5, 2025, a true and correct copy of which is attached hereto as Exhibit "B." The screenshot captured by Plaintiff is attached hereto as Exhibit "C."

52.    An inconsistent reason provided for the employee's termination is sufficient to demonstrate a causal connection for purposes of establishing a *prima facie* case of discrimination/retaliation under the FMLA as recognized by the Court of Appeals for the Third Circuit in *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314 (3d Cir. 2014). *See Lupyan v. Corinthian Coll., Inc.*, 761 F.3d 314, 325 (3d Cir. 2014) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000), for the proposition that "one means of establishing the requisite causal connection in retaliation claims is setting forth evidence showing 'inconsistent reasons for terminating the employee[.]'"). Furthermore, an inconsistency or contradictory reason provided for the employee's termination is sufficient evidence upon which the trier of fact may infer pretext and an illegal discriminatory or retaliatory motive. *See Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994).

53.    Following the exhaustion of Plaintiff's 12-week FMLA entitlement, on or about September 2, 2024, Plaintiff was subsequently approved for, and Plaintiff's leave was subsequently covered by, the Short-Term Disability ("STD") policy offered to Plaintiff by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of

19

Pennsylvania, and/or University of Pennsylvania.  For clarity, Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania ran Plaintiff's 12-week FMLA entitlement concurrently with the Short-Term Disability leave.  Plaintiff was subsequently on Short-Term Disability leave beginning September 3, 2024 through September 24, 2024, with a return-to-work date of September 25, 2024.  Plaintiff was subsequently notified that she was being terminated from her employment by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, on October 15, 2024.  Therefore, Plaintiff also identifies the aforementioned timing as further evidence in support of Plaintiff's *prima facie* case of discrimination/retaliation under the FMLA.  Further, it is believed and therefore averred that, as early as on or about October 11, 2024, Defendant, André Douglas, contacted the University's I.T. department for purposes of closing out Plaintiff's e-mail account, credentials, and/or related data, because Defendants were planning to terminate Plaintiff's employment.

54.    On or about June 21, 2024, as a result of Plaintiff moving back the start date of her FMLA leave from June 19, 2024 to June 24, 2024, Plaintiff received discipline in the form of an Employee Counseling Form from Defendant, Mr. Douglas, who was the subject of Plaintiff's complaint of discrimination and retaliation, and which was the first such disciplinary write-up or written warning Plaintiff had ever received up to that point during her employment with Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  Plaintiff contends that Defendant, Mr. Douglas, provided Plaintiff the Employee Counseling Form on account of discrimination and retaliation against Plaintiff due to her valid request to use FMLA leave, and on account of the complaint of discrimination and retaliation that Plaintiff had filed against Mr. Douglas.

20

55.     Once Plaintiff subsequently rescheduled the start date for her FMLA leave from June 19, 2024 to June 24, 2024, Mr. Douglas then scheduled a meeting with Plaintiff to deliver the Employee Counseling Form to Plaintiff.  Mr. Douglas admitted in the e-mail he sent to Plaintiff scheduling the meeting, which is attached hereto as Exhibit "C," that Mr. Douglas was changing the date he was going to deliver the Employee Counseling Form to Plaintiff based on the fact that Plaintiff had rescheduled the start date for her medical leave.  More specifically, Mr. Douglas stated bluntly to Plaintiff, in the email, in pertinent part, "Apologies for that, but because you pushed back your leave date, we are starting it now." *See* E-mail Correspondence from Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, sent to Plaintiff, dated June 21, 2024, a true and correct copy of which is attached hereto as Exhibit "C," at page 1.  It should also be noted that Mr. Douglas, in addition to openly admitting that he was changing the date he was going to deliver the Employee Counseling Form to Plaintiff based on the fact that Plaintiff had rescheduled the start date for her medical leave, provided an "apolog[y]" to Plaintiff for the same. Delivering the Employee Counseling form to Plaintiff in this manner is also alleged to be a deviation in Defendants' policies and procedures.

56.     As a result of Defendants' discriminatory/retaliatory conduct, Plaintiff was directly and proximately caused by Defendants to sustain damages, and hereby requests any and all remedies and damages available under 29 U.S.C. § 2617.

**WHEREFORE**, Plaintiff, Kristin Weaver, demands judgment in her favor and against Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, University of Pennsylvania, and André Douglas, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, benefits, bonuses, commissions, and promotions Plaintiff would

21

have received, under 29 U.S.C. § 2617, including but not limited to lost wages, salary, employment benefits, and/or other compensation lost to Plaintiff by reason of the violation, back and front pay and benefits, interest pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit, and any and all other costs of the action pursuant to 29 U.S.C. § 2617(a)(3), as well as equitable or injunctive relief requiring Defendants to reinstate and/or employ Plaintiff, to promote Plaintiff, to provide a neutral future employment reference for Plaintiff, and any other equitable relief that this Court determines to be just, proper, and equitable pursuant to 29 U.S.C. § 2617(a)(1)(B).

**COUNT II:**
**WRONGFUL DISCHARGE/TERMINATION IN VIOLATION OF 29 U.S.C. § 2615(a)(2)**
**OF THE FAMILY AND MEDICAL LEAVE ACT —**
**DISCRIMINATION/RETALIATION FOR OPPOSING A PRACTICE MADE**
**UNLAWFUL BY THIS CHAPTER**
**(Plaintiff, Kristin Weaver v. Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, University of Pennsylvania, and André Douglas)**

57. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

58. On or about June 4, 2024, Plaintiff requested leave under the FMLA on account of her own serious health conditions from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, specifically of the HR department of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania. Plaintiff indicated that the start date for her FMLA leave would be June 19, 2024. Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, approved Plaintiff's request for FMLA leave.

59.    At the time Plaintiff requested leave under the FMLA from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania due to her own serious health conditions, Plaintiff was an eligible employee under the FMLA, as Plaintiff had at that point been previously employed by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, for a total of at least one (1) year and 1,250 hours of service.

60.    On or about June 4, 2024, Plaintiff requested FMLA leave from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, for her own serious health conditions, which consisted of an exacerbation of Plaintiff's cerebral palsy condition, and of her covered mental health conditions including Obsessive Compulsive Disorder ("OCD"), Generalized Anxiety Disorder ("GAD"), and Attention Deficit Hyperactivity Disorder ("ADHD").  Plaintiff's physical and mental health conditions were exacerbated in or about this time.  Plaintiff suffered physical and mental health challenges, including suicidal ideation, which were exacerbated at this time.

61.    On or about the same date, June 4, 2024, Plaintiff lodged a complaint against her supervisor, Defendant, Mr. Douglas, for allegedly discriminating against and retaliating against Plaintiff for her valid request to use FMLA leave.  Plaintiff's act of complaining about the allegedly discriminatory and retaliatory conduct of her supervisor, Defendant, Mr. Douglas, constituted protected conduct or activity under the FMLA, in addition to Plaintiff's valid request to use FMLA leave, and her subsequent valid use of FMLA leave, which also constituted protected conduct or activity under the FMLA.

62.    On or about June 17, 2024, Mr. Samuel Starks, the Executive Director of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of

Pennsylvania, and/or University of Pennsylvania's Office of Affirmative Action ("OAA"), which Defendants have subsequently renamed the Office of Equal Opportunity Programs ("OEOP"), had a meeting with Plaintiff to address her complaint of discrimination and retaliation against Defendant, André Douglas.

63.    On or about June 21, 2024, as a result of Plaintiff moving back the start date of her FMLA leave from June 19, 2024 to June 24, 2024, Plaintiff received discipline in the form of an Employee Counseling Form from Defendant, Mr. Douglas, who was the subject of Plaintiff's complaint of discrimination and retaliation, and which was the first such disciplinary write-up or written warning Plaintiff had ever received up to that point during her employment with Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  Plaintiff contends that Defendant, Mr. Douglas, provided Plaintiff the Employee Counseling Form on account of discrimination and retaliation against Plaintiff due to her valid request to use FMLA leave, and on account of the complaint of discrimination and retaliation that Plaintiff had filed against Mr. Douglas.

64.    Once Plaintiff subsequently rescheduled the start date for her FMLA leave from June 19, 2024 to June 24, 2024, Mr. Douglas then scheduled a meeting with Plaintiff to deliver the Employee Counseling Form to Plaintiff.  Mr. Douglas admitted in the e-mail he sent to Plaintiff scheduling the meeting, which is attached hereto as Exhibit "C," that Mr. Douglas was changing the date he was going to deliver the Employee Counseling Form to Plaintiff based on the fact that Plaintiff had rescheduled the start date for her medical leave.  More specifically, Mr. Douglas stated bluntly to Plaintiff, in the email, in pertinent part, "Apologies for that, but because you pushed back your leave date, we are starting it now." *See* E-mail Correspondence from Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, sent to Plaintiff, dated June 21, 2024,

24

a true and correct copy of which is attached hereto as Exhibit "C," at page 1. It should also be noted that Mr. Douglas, in addition to openly admitting that he was changing the date he was going to deliver the Employee Counseling Form to Plaintiff based on the fact that Plaintiff had rescheduled the start date for her medical leave, provided an "apolog[y]" to Plaintiff for the same.

65.    Plaintiff contends Mr. Douglas's decision not to give the Employee Counseling Form to Plaintiff until after Plaintiff had changed the start date of her FMLA leave from June 19th to June 24th was because Mr. Douglas believed he could avoid creating an inference of discrimination or retaliation against Plaintiff based on the timing of the Plaintiff's start date for her FMLA leave and the date that Mr. Douglas was going to subsequently deliver the Employee Counseling Form to Plaintiff. However, once Plaintiff rescheduled the start date of her FMLA leave from June 19th to June 24th, Mr. Douglas believed he could then provide the Employee Counseling Form to Plaintiff on June 21st and that in doing so he could attempt to avoid such an inference being drawn.

66.    The fact that Mr. Douglas was not going to deliver the Employee Counseling Form to Plaintiff until after Plaintiff had changed the start date of her FMLA leave undermines the credibility of, and the stated reason or reasons contained within, the Employee Counseling Form. Whether or not Plaintiff made a request for FMLA leave, the start date for her FMLA leave, or the fact that she subsequently rescheduled the start date of her FMLA leave should not be considerations in whether discipline is going to be given or is not going to be given to the employee. If the discipline was justified, Plaintiff contends that the discipline would have been given notwithstanding the start date of her FMLA leave, or the fact that Plaintiff subsequently changed the start date of her FMLA leave. Mr. Douglas was clearly attempting to avoid an inference of discrimination or of retaliation being drawn against him with respect to the timing of

25

his conduct.  Plaintiff further alleges that the impetus for the Employee Counseling Form being given to Plaintiff was on account of the fact that Plaintiff had requested FMLA leave and had rescheduled the start date for her FMLA leave.

67.     Defendants took adverse employment action against Plaintiff on or about October 15, 2024 by wrongfully terminating/discharging Plaintiff from her employment on that date in retaliation for Plaintiff's request for and use of FMLA leave.  Further, it is believed and therefore averred that, as early as on or about October 11, 2024, Mr. Douglas contacted the University's I.T. department for purposes of closing out Plaintiff's e-mail account, credentials, and/or related data, because Defendants were planning to terminate Plaintiff's employment.

68.     Defendants provided an inconsistent, contradictory, and pretextual reason for terminating/discharging Plaintiff.  Defendant, The Trustees of the University of Pennsylvania, submitted a Position Statement in this matter to the E.E.O.C. on October 2, 2025.  In that Statement, Defendant, The Trustees of the University of Pennsylvania, set forth the following as the purported legitimate, non-discriminatory reason ("LNDR") for Plaintiff's termination in the instant matter, the pertinent excerpt of which is copied below:

> …
>
> Following a review of Ms. Weaver's position, which showed many of her tasks were not being performed and/or were obsolete or redundant, Penn eliminated Ms. Weaver's position.  She was informed of this decision on October 15, 2024.  (*See* Exhibit F.)  The position has not been filled and has not been posted – it was eliminated for business reasons and Ms. Weaver is not being replaced.
>
> …

*See* Position Statement submitted by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., dated October 2, 2025, at page 3, paragraph 1.  A complete copy of the Position Statement provided by Defendant, The Trustees of the University of Pennsylvania, to

26

the E.E.O.C., dated October 2, 2025, is attached hereto as Exhibit "A" in order to provide the full context for the statement.

69. The foregoing reason provided for Plaintiff's termination in the Position Statement supplied by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., is inconsistent, contradictory, and pretextual, as Plaintiff can prove that the foregoing statement made by Defendant, The Trustees of the University of Pennsylvania, is false. After Plaintiff was terminated, Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, Plaintiff's direct supervisor, the subject of Plaintiff's complaint of discrimination and retaliation, and the alleged decisionmaker responsible for making the decision to discharge Plaintiff, made a post on LinkedIn seeking applicants for Plaintiff's former position of Program Coordinator, just not Plaintiff. In or about January 2025, and possibly earlier, Mr. Douglas posted on LinkedIn as follows:

> Come join my team! We are currently looking for a temporary program coordinator to assist with the in-person programming aspect of Wharton Academy and Wharton Global Youth Programs. Although this is a temporary position, it may lead to a full-time offer as we look to expand our team. If you have questions, feel free to reach out.
>
> #highered #program #students #job #hiring #opportunity #summer #temporary

*See* the attached LinkedIn post from Mr. André Douglas, Wharton Alt-Finance Program Manager, for Program Coordinator, dated in or about January 2025, and captured by Plaintiff in a screenshot on February 5, 2025, a true and correct copy of which is attached hereto as Exhibit "B." The screenshot captured by Plaintiff is attached hereto as Exhibit "C."

70. An inconsistent reason provided for the employee's termination is sufficient to demonstrate a causal connection for purposes of establishing a *prima facie* case of discrimination/retaliation under the FMLA as recognized by the Court of Appeals for the Third

Circuit in *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314 (3d Cir. 2014).  *See Lupyan v. Corinthian Coll., Inc.*, 761 F.3d 314, 325 (3d Cir. 2014) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000), for the proposition that "one means of establishing the requisite causal connection in retaliation claims is setting forth evidence showing 'inconsistent reasons for terminating the employee[.]'").  Furthermore, an inconsistency or contradictory reason provided for the employee's termination is sufficient evidence upon which the trier of fact may infer pretext and an illegal discriminatory or retaliatory motive.  *See Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994).

71.    Following the exhaustion of Plaintiff's 12-week FMLA entitlement, on or about September 2, 2024, Plaintiff was subsequently approved for, and Plaintiff's leave was subsequently covered by, the Short-Term Disability ("STD") policy offered to Plaintiff by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  For clarity, Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania ran Plaintiff's 12-week FMLA entitlement concurrently with the Short-Term Disability leave.  Plaintiff was subsequently on Short-Term Disability leave beginning September 3, 2024 through September 24, 2024, with a return-to-work date of September 25, 2024.  Plaintiff was subsequently terminated from her employment by Defendants on October 15, 2024, with, Defendant, André Douglas, upon information and belief, notifying the University's I.T. department to close out Plaintiff's e-mail account, credentials, and/or related data on or about October 11, 2024 because Defendants were planning to terminate Plaintiff's employment.  Therefore, Plaintiff also identifies the aforementioned timing as further evidence in support of Plaintiff's *prima facie* case of discrimination/retaliation under the FMLA.

72.    Plaintiff also identifies the following timing as further evidence of discrimination/retaliation for Plaintiff's protected conduct/activity.  On or about June 4, 2024, Plaintiff lodged a complaint against her supervisor, Defendant, Mr. Douglas, for allegedly discriminating against and retaliating against Plaintiff for her valid request to use FMLA leave, and, on or about June 17, 2024, Plaintiff met with Mr. Sam Starks about the same.  Mr. Starks is the Executive Director of the Office of Affirmative Action, subsequently renamed by Defendants to the Office of Equal Opportunity Programs.  Plaintiff's act of complaining about the allegedly discriminatory and retaliatory conduct of her supervisor, Defendant, Mr. Douglas, and speaking to Mr. Starks about the same, constituted protected conduct or activity.  Then, once Plaintiff rescheduled the start date for her FMLA leave from June 19, 2024 to June 24, 2024, Mr. Douglas then scheduled a meeting with Plaintiff to deliver the Employee Counseling Form to Plaintiff.  Mr. Douglas delivered the Employee Counseling Form to Plaintiff on June 21, 2024.  Delivering the Employee Counseling form to Plaintiff in this manner is also alleged to be a deviation in Defendants' policies and procedures.

**WHEREFORE**, Plaintiff, Kristin Weaver, demands judgment in her favor and against Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, University of Pennsylvania, and André Douglas, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, benefits, bonuses, commissions, and promotions Plaintiff would have received, under 29 U.S.C. § 2617, including but not limited to lost wages, salary, employment benefits, and/or other compensation lost to Plaintiff by reason of the violation, back and front pay and benefits, interest pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), pre- and post-judgment interest, reasonable attorneys' fees, expert

witness fees, costs of suit, and any and all other costs of the action pursuant to 29 U.S.C. § 2617(a)(3), as well as equitable or injunctive relief requiring Defendants to reinstate and/or employ Plaintiff, to promote Plaintiff, to provide a neutral future employment reference for Plaintiff, and any other equitable relief that this Court determines to be just, proper, and equitable pursuant to 29 U.S.C. § 2617(a)(1)(B).

**COUNT III:**
**WRONGFUL DISCHARGE/TERMINATION IN VIOLATION OF 29 U.S.C. § 2615(a)(1) OF THE FAMILY AND MEDICAL LEAVE ACT —**
**FOR EXERCISING AND/OR ATTEMPING TO EXERCISE AN FMLA RIGHT BY REQUESTING AND/OR TAKING FMLA LEAVE**
**(Plaintiff, Kristin Weaver v. Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, University of Pennsylvania, and André Douglas)**

73. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

74. 29 U.S.C. § 2615(a)(1) provides as follows:

    (a)    Interference with rights

        (1)    Exercise of rights

            It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

29 U.S.C. § 2615(a)(1).

75. Adverse employment action in the face of a lawful exercise or attempt to exercise FMLA rights fits within § 2615(a)(1)'s language of "interfere with, restrain, or deny." 29 U.S.C. § 2615(a)(1).

76. On or about June 4, 2024, Plaintiff requested leave under the FMLA on account of her own serious health conditions from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania,

specifically of the HR department of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  Plaintiff indicated that the start date for her FMLA leave would be June 19, 2024.  Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, approved Plaintiff's request for FMLA leave.

77.     At the time Plaintiff requested leave under the FMLA from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania due to her own serious health conditions, Plaintiff was an eligible employee under the FMLA, as Plaintiff had at that point been previously employed by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, for a total of at least one (1) year and 1,250 hours of service.

78.     On or about June 4, 2024, Plaintiff requested FMLA leave from Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania, for her own serious health conditions, which consisted of an exacerbation of Plaintiff's cerebral palsy condition, and of her covered mental health conditions including Obsessive Compulsive Disorder ("OCD"), Generalized Anxiety Disorder ("GAD"), and Attention Deficit Hyperactivity Disorder ("ADHD").  Plaintiff's physical and mental health conditions were exacerbated in or about this time.  Plaintiff suffered physical and mental health challenges, including suicidal ideation, which were exacerbated at this time.

79.     On or about the same date, June 4, 2024, Plaintiff lodged a complaint against her supervisor, Defendant, Mr. Douglas, for allegedly discriminating against and retaliating against Plaintiff for her valid request to use FMLA leave.  Plaintiff's act of complaining about the allegedly discriminatory and retaliatory conduct of her supervisor, Defendant, Mr. Douglas, constituted

31

protected conduct or activity under the FMLA, in addition to Plaintiff's valid request to use FMLA leave, and her subsequent valid use of FMLA leave, which also constituted protected conduct or activity under the FMLA.

80.    On or about June 17, 2024, Mr. Samuel Starks, the Executive Director of Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania's Office of Affirmative Action ("OAA"), which Defendants have subsequently renamed the Office of Equal Opportunity Programs ("OEOP"), had a meeting with Plaintiff to address her complaint of discrimination and retaliation against Defendant, Mr. Douglas.

81.    Plaintiff subsequently moved back her FMLA leave date which was scheduled to begin on June 19, 2024 in order for it to begin on June 24, 2024 instead.

82.    On or about June 21, 2024, as a result of Plaintiff moving back the start date of her FMLA leave from June 19, 2024 to June 24, 2024, Plaintiff received discipline in the form of an Employee Counseling Form from Defendant, Mr. Douglas, who was the subject of Plaintiff's complaint of discrimination and retaliation, and which was the first such disciplinary write-up or written warning Plaintiff had ever received up to that point during her employment with Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  Plaintiff contends that Defendant, Mr. Douglas, provided Plaintiff the Employee Counseling Form on account of discrimination and retaliation against Plaintiff due to her valid request to use FMLA leave, and on account of the complaint of discrimination and retaliation that Plaintiff had filed against Mr. Douglas.

83.    Once Plaintiff subsequently rescheduled the start date for her FMLA leave from June 19, 2024 to June 24, 2024, Mr. Douglas then scheduled a meeting with Plaintiff to deliver the

32

Employee Counseling Form to Plaintiff. Mr. Douglas admitted in the e-mail he sent to Plaintiff scheduling the meeting, which is attached hereto as Exhibit "C," that Mr. Douglas was changing the date he was going to deliver the Employee Counseling Form to Plaintiff based on the fact that Plaintiff had rescheduled the start date for her medical leave. More specifically, Mr. Douglas stated bluntly to Plaintiff, in the email, in pertinent part, "Apologies for that, but because you pushed back your leave date, we are starting it now." *See* E-mail Correspondence from Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, sent to Plaintiff, dated June 21, 2024, a true and correct copy of which is attached hereto as Exhibit "C," at page 1.

84.    Plaintiff engaged in protected conduct/activity during her employment with Defendants by exercising or attempting to exercise an FMLA right by requesting and taking FMLA leave.

85.    Defendants took adverse employment action against Plaintiff on or about October 15, 2024 by wrongfully terminating/discharging Plaintiff from her employment on that date in retaliation for Plaintiff's request for and use of FMLA leave. Further, it is believed and therefore averred that, as early as on or about October 11, 2024, Mr. Douglas contacted the University's I.T. department for purposes of closing out Plaintiff's e-mail account, credentials, and/or related data, because Defendants were planning to terminate Plaintiff's employment.

86.    Defendants provided an inconsistent, contradictory, and pretextual reason for terminating/discharging Plaintiff. Defendant, The Trustees of the University of Pennsylvania, submitted a Position Statement in this matter to the E.E.O.C. on October 2, 2025. In that Statement, Defendant, The Trustees of the University of Pennsylvania, set forth the following as the purported legitimate, non-discriminatory reason ("LNDR") for Plaintiff's termination in the instant matter, the pertinent excerpt of which is copied below:

33

…

> Following a review of Ms. Weaver's position, which showed many of her tasks were not being performed and/or were obsolete or redundant, Penn eliminated Ms. Weaver's position.  She was informed of this decision on October 15, 2024.  (*See* Exhibit F.)  The position has not been filled and has not been posted – it was eliminated for business reasons and Ms. Weaver is not being replaced.

…

*See* Position Statement submitted by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., dated October 2, 2025, at page 3, paragraph 1.  A complete copy of the Position Statement provided by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., dated October 2, 2025, is attached hereto as Exhibit "A" in order to provide the full context for the statement.

87.    The foregoing reason provided for Plaintiff's termination in the Position Statement supplied by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., is inconsistent, contradictory, and pretextual, as Plaintiff can prove that the foregoing statement made by Defendant, The Trustees of the University of Pennsylvania, is false.  After Plaintiff was terminated, Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, Plaintiff's direct supervisor, the subject of Plaintiff's complaint of discrimination and retaliation, and the alleged decisionmaker responsible for making the decision to discharge Plaintiff, made a post on LinkedIn seeking applicants for Plaintiff's former position of Program Coordinator, just not Plaintiff.  In or about January 2025, and possibly earlier, Mr. Douglas posted on LinkedIn as follows:

> Come join my team! We are currently looking for a temporary program coordinator to assist with the in-person programming aspect of Wharton Academy and Wharton Global Youth Programs.  Although this is a temporary position, it may lead to a full-time offer as we look to expand our team. If you have questions, feel free to reach out.

34

#highered #program #students #job #hiring #opportunity #summer #temporary

*See* the attached LinkedIn post from Mr. André Douglas, Wharton Alt-Finance Program Manager, for Program Coordinator, dated in or about January 2025, and captured by Plaintiff in a screenshot on February 5, 2025, a true and correct copy of which is attached hereto as Exhibit "B." The screenshot captured by Plaintiff is attached hereto as Exhibit "C."

88.    An inconsistent reason provided for the employee's termination is sufficient to demonstrate a causal connection for purposes of establishing a *prima facie* case of discrimination/retaliation under the FMLA as recognized by the Court of Appeals for the Third Circuit in *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314 (3d Cir. 2014). *See Lupyan v. Corinthian Coll., Inc.*, 761 F.3d 314, 325 (3d Cir. 2014) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000), for the proposition that "one means of establishing the requisite causal connection in retaliation claims is setting forth evidence showing 'inconsistent reasons for terminating the employee[.]'"). Furthermore, an inconsistency or contradictory reason provided for the employee's termination is sufficient evidence upon which the trier of fact may infer pretext and an illegal discriminatory or retaliatory motive. *See Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994).

89.    Following the exhaustion of Plaintiff's 12-week FMLA entitlement, on or about September 2, 2024, Plaintiff was subsequently approved for, and Plaintiff's leave was subsequently covered by, the Short-Term Disability ("STD") policy offered to Plaintiff by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania. For clarity, Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania ran Plaintiff's 12-week FMLA entitlement concurrently with the Short-Term

35

Disability leave. Plaintiff was subsequently on Short-Term Disability leave beginning September 3, 2024 through September 24, 2024, with a return-to-work date of September 25, 2024. Plaintiff was subsequently terminated from her employment by Defendants on October 15, 2024, with, Defendant, André Douglas, upon information and belief, notifying the University's I.T. department to close out Plaintiff's e-mail account, credentials, and/or related data on or about October 11, 2024 because Defendants were planning to terminate Plaintiff's employment. Therefore, Plaintiff also identifies the aforementioned timing as further evidence in support of Plaintiff's *prima facie* case of discrimination/retaliation under the FMLA.

90.    After Plaintiff rescheduled the start date for her FMLA leave from June 19, 2024 to June 24, 2024, Mr. Douglas then scheduled a meeting with Plaintiff to deliver the Employee Counseling Form to Plaintiff. Mr. Douglas admitted in the e-mail he sent to Plaintiff scheduling the meeting, which is attached hereto as Exhibit "C," that Mr. Douglas was changing the date he was going to deliver the Employee Counseling Form to Plaintiff based on the fact that Plaintiff had rescheduled the start date for her medical leave. More specifically, Mr. Douglas stated bluntly to Plaintiff, in the email, in pertinent part, "Apologies for that, but because you pushed back your leave date, we are starting it now." *See* E-mail Correspondence from Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, sent to Plaintiff, dated June 21, 2024, a true and correct copy of which is attached hereto as Exhibit "C," at page 1. Delivering the Employee Counseling form to Plaintiff in this manner is also alleged to be a deviation in Defendants' policies and procedures.

**WHEREFORE**, Plaintiff, Kristin Weaver, demands judgment in her favor and against Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, University of Pennsylvania, and André Douglas, individually, and/or jointly and

36

severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, benefits, bonuses, commissions, and promotions Plaintiff would have received, under 29 U.S.C. § 2617, including but not limited to lost wages, salary, employment benefits, and/or other compensation lost to Plaintiff by reason of the violation, back and front pay and benefits, interest pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit, and any and all other costs of the action pursuant to 29 U.S.C. § 2617(a)(3), as well as equitable or injunctive relief requiring Defendants to reinstate and/or employ Plaintiff, to promote Plaintiff, to provide a neutral future employment reference for Plaintiff, and any other equitable relief that this Court determines to be just, proper, and equitable pursuant to 29 U.S.C. § 2617(a)(1)(B).

**COUNT IV:**
**WRONGFUL DISCHARGE/TERMINATION ON ACCOUNT OF DISCRIMINATION/RETALIATION IN VIOLATION OF SECTION 510 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA"), 29 U.S.C. § 1140 (Plaintiff, Kristin Weaver v. Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and University of Pennsylvania)**

91.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

92.     At all times relevant hereto, Defendants, The Trustees of the University of Pennsylvania, and University of Pennsylvania, violated 29 U.S.C. § 1140, which provides, in pertinent part, "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140.

93.     Plaintiff's entitlement to Short-Term Disability leave pursuant to a Short-Term Disability policy while employed with Defendants, The Trustees of the University of

37

Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania constituted an employee benefit plan covered by ERISA.

94.     At all times relevant hereto, Plaintiff was a participant and/or a beneficiary pursuant to ERISA.  In or about September 2024, Plaintiff requested and was approved for Short-Term Disability leave pursuant to a Short-Term Disability policy belonging to Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.

95.     Following the exhaustion of Plaintiff's 12-week FMLA entitlement, on or about September 2, 2024, Plaintiff was subsequently approved for, and Plaintiff's leave was subsequently covered by, the Short-Term Disability policy offered to Plaintiff by Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania.  For clarity, Defendants, The Trustees of the University of Pennsylvania, Trustees of the University of Pennsylvania, and/or University of Pennsylvania ran Plaintiff's 12-week FMLA entitlement concurrently with the Short-Term Disability leave. Plaintiff was subsequently on Short-Term Disability leave beginning September 3, 2024 through September 24, 2024, with a return-to-work date of September 25, 2024.  Plaintiff was subsequently terminated from her employment by Defendants on October 15, 2024, with, Defendant, André Douglas, upon information and belief, notifying the University's I.T. department to close out Plaintiff's e-mail account, credentials, and/or related data on or about October 11, 2024 because Defendants were planning to terminate Plaintiff's employment.  Therefore, Plaintiff also identifies the aforementioned timing as further evidence in support of Plaintiff's *prima facie* case of discrimination/retaliation under ERISA.

38

96.    Defendants provided an inconsistent, contradictory, and pretextual reason for terminating/discharging Plaintiff.  Defendant, The Trustees of the University of Pennsylvania, submitted a Position Statement in this matter to the E.E.O.C. on October 2, 2025.  In that Statement, Defendant, The Trustees of the University of Pennsylvania, set forth the following as the purported legitimate, non-discriminatory reason ("LNDR") for Plaintiff's termination in the instant matter, the pertinent excerpt of which is copied below:

> …
>
> Following a review of Ms. Weaver's position, which showed many of her tasks were not being performed and/or were obsolete or redundant, Penn eliminated Ms. Weaver's position.  She was informed of this decision on October 15, 2024.  (*See* Exhibit F.)  The position has not been filled and has not been posted − it was eliminated for business reasons and Ms. Weaver is not being replaced.
>
> …

*See* Position Statement submitted by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., dated October 2, 2025, at page 3, paragraph 1.  A complete copy of the Position Statement provided by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., dated October 2, 2025, is attached hereto as Exhibit "A" in order to provide the full context for the statement.

97.    The foregoing reason provided for Plaintiff's termination in the Position Statement supplied by Defendant, The Trustees of the University of Pennsylvania, to the E.E.O.C., is inconsistent, contradictory, and pretextual, as Plaintiff can prove that the foregoing statement made by Defendant, The Trustees of the University of Pennsylvania, is false.  After Plaintiff was terminated, Defendant, Mr. André Douglas, Wharton Alt-Finance Program Manager, Plaintiff's direct supervisor, the subject of Plaintiff's complaint of discrimination and retaliation, and the alleged decisionmaker responsible for making the decision to discharge Plaintiff, made a post on

39

LinkedIn seeking applicants for Plaintiff's former position of Program Coordinator, just not Plaintiff. In or about January 2025, and possibly earlier, Mr. Douglas posted on LinkedIn as follows:

> Come join my team! We are currently looking for a temporary program coordinator to assist with the in-person programming aspect of Wharton Academy and Wharton Global Youth Programs. Although this is a temporary position, it may lead to a full-time offer as we look to expand our team. If you have questions, feel free to reach out.
>
> #highered #program #students #job #hiring #opportunity #summer #temporary

*See* the attached LinkedIn post from Mr. André Douglas, Wharton Alt-Finance Program Manager, for Program Coordinator, dated in or about January 2025, and captured by Plaintiff in a screenshot on February 5, 2025, a true and correct copy of which is attached hereto as Exhibit "B." The screenshot captured by Plaintiff is attached hereto as Exhibit "C."

**WHEREFORE**, Plaintiff, Kristin Weaver, demands judgment in her favor and against Defendants, The Trustees of the University of Pennsylvania, and University of Pennsylvania, individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all damages including any and all back and front pay, benefits, bonuses, commissions, promotions Plaintiff would have received, and any other actual damages incurred due to Defendants' alleged discriminatory and/or retaliatory acts, as well as for any and all damages and remedies pursuant to 29 U.S.C. § 1132(a)(1)(A), for the remedies under 29 U.S.C. § 1132(a)(1)(B) in order "to enforce [Plaintiff's] rights under the terms of the plan," for the remedies under 29 U.S.C. § 1132(a)(3)(A) "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," for the remedies under 29 U.S.C. § 1132(a)(3)(B) in order "to obtain other appropriate relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan," any and all appropriate

40

equitable and/or injunctive relief seeking Plaintiff's reinstatement, re-employment, and/or promotion/s, and any other appropriate relief that this Court determines to be just, proper, and equitable.

## V.    JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.


DATED: 05/30/2026                    Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB #2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff,*
*Kristin Weaver*

## <u>VERIFICATION</u>

I hereby declare under penalty of perjury that I am the Plaintiff in the within action and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.


Executed on: 05/30/2026                          By: Kristin Weaver (May 30, 2026 13:55:12 EDT)

Kristin Weaver

## CERTIFICATE OF SERVICE

I, <u>JUSTIN F. ROBINETTE, ESQUIRE</u>, hereby certify that I caused to be served on the Defendant a true and correct copy of the foregoing document, via the method, and on the date set forth below, or as soon thereafter as service can be effectuated:

### *VIA PERSONAL SERVICE/HAND DELIVERY*

Trustees of the University of Pennsylvania /
University of Pennsylvania
Office of the General Counsel
2929 Walnut Street, 4th Floor
Philadelphia, PA 19104

DATED: <u>05/30/2026</u>

Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB # 2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff,*
*Kristin Weaver*